IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Lynnette Rae, | Case No. 3:08 CV 317 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Lynnette Rae filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Commissioner's decision to deny disability insurance benefits (DIB) and supplemental security income benefits (SSI). This case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation (R&R) in accordance with Local Rule 72.2(b)(2). Following briefs on the merits from both parties, the Magistrate filed a Report (Doc. No. 16) recommending the Court affirm the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).[1]

This matter is before the Court on Plaintiff's Objection to the R&R (Doc. No. 17), to which Defendant has responded (Doc. No. 18). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) and (C), this Court has made a *de novo* determination of the Magistrate's findings. The Court adopts the procedural and factual background set forth in the R&R

---

[1] Sentence four of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), states: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

(pp. 1-12). Furthermore, the Court adopts the Magistrate's R&R and affirms the Administrative Law Judge's (ALJ) decision to deny Plaintiff DIB and SSI benefits.

## BACKGROUND

Plaintiff filed applications for DIB and SSI on October 28, 2003, alleging disability due primarily to a bipolar disorder dating back to November 8, 2002. After reviewing the medical evidence, the ALJ determined Plaintiff was not disabled from the date of claimed onset through the date of decision (May 24, 2007) and denied both DIB and SSI benefits.

The Magistrate reviewed the Record and found the ALJ's findings were supported by substantial evidence. Plaintiff objects to the Magistrate's findings on two main grounds: (1) the ALJ had a duty to supplement the Record if he felt there was inadequate evidence to support a finding; and (2) the ALJ did not properly frame his hypothetical question to Plaintiff's vocational expert (VE) to encompass all the impairments found by Kathy Stenfors, a licensed clinical social worker. Plaintiff requests this Court reject the Magistrate's R&R and remand her claim for a new hearing.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833

(6th Cir. 2006) (*citing* 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a) & (d). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (definition used in DIB context); *see also* 20 C.F.R. § 416.905(a) (definition used in SSI context).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. §§ 404.1520 and 416.920, respectively:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

3

establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step."). The Court considers claimant's residual functional capacity, age, education, and past work experience to determine if claimant could perform other work. *Walters*, 127 F.3d at 529.

Only if a claimant satisfies each element of the analysis, including the inability to do other work, and meets the duration requirement, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529. The duration requirements differ for DIB and SSI claims. DIB requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security. SSI focuses on income and resources as basic eligibility factors.

## DISCUSSION

### Supplementation of Record

Plaintiff's first objection hinges on the ALJ's failure to consult with Dr. Kazmi regarding Plaintiff's ability to perform work, as the ALJ indicated he would do at the close of the first hearing. Specifically, the ALJ stated:

> Ok, I'm, I've considered your request for a CE, and what I'd like to do is, I, she, she has received treatment most recently by Dr. Kazmi by, over a period of time. So I think he's in the best position to express an opinion. What I'd like to do is send a medical assessment of the claimant's ability to perform work related functions to him for completion. Then I'd like to review it and have your comments on that. And, and if necessary, we'll have a supplemental hearing.

(Tr. 493-94).

4

However, the ALJ did not subsequently request this additional "medical assessment" from Dr. Kazmi. Plaintiff contends the ALJ had a duty to supplement the Record if he felt there was inadequate evidence to support a finding.

As the Magistrate noted, the regulations do not require an ALJ to refer a claimant to a medical specialist, but rather permit him to do so "if the existing medical sources do not contain sufficient evidence to make a determination." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990) (citations omitted). Indeed, the Sixth Circuit has adopted the standard that a "full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citation omitted) (emphasis in original). The regulations indicate an ALJ will seek additional evidence or clarification from a medical source when the report "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e).

In the instant matter, the ALJ was under an obligation to solicit a "medical assessment" from Dr. Kazmi if the ALJ felt it was needed to render his disability decision. Though the ALJ did not follow up with Dr. Kazmi, the ALJ did rely on Dr. Kazmi's records that were entered as exhibits, and the ALJ found these records contained the necessary information for him to conclude Plaintiff exhibited "medication compliance with improvement" (Tr. 22). Additionally, in his opinion, the ALJ explained his failure to pursue a medical assessment from Dr. Kazmi by noting "[u]nfortunately, at the end of September 2006, the claimant elected to change psychiatrists. Accordingly, Attorney Koder submitted an opinion dated April 11, 2007, from her new psychiatrist P. Shawberry, M.D. . . ."

5

(Tr. 21-22.). Thus, the ALJ had what he felt was missing -- a current report of Plaintiff's psychiatric condition -- and did not see the need in contacting Dr. Kazmi who was no longer treating Plaintiff. While the ALJ ultimately discounted Dr. Shawberry's assessment as inconsistent with the rest of the medical records, the ALJ had sufficient information to make a disability decision. That information included Dr. Kazmi's records. With the current psychiatric records from Dr. Shawberry, the ALJ was not required to seek additional information from Dr. Kazmi.

**VE's Hypothetical Question Incorporating Stenfors' Opinions**

Plaintiff's second objection contends that if the ALJ indeed gave Stenfors' opinion controlling weight, as she alleges the Magistrate found, then the ALJ failed to properly frame his hypothetical question to the VE to incorporate all of the impairments noted by Stenfors.

"Controlling weight" is a term of art in the regulations and can only be given to medical opinions, 20 C.F.R. § 404.1527(d), from "acceptable medical sources," 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). Stenfors is a licensed clinical social worker, and therefore she does not fall into any of the five categories of acceptable medical source to which controlling weight may be given.[2]

---

[2]

In the R&R, the Magistrate indicated "a licensed or certified individual's opinion is entitled to weight for the purposes of establishing borderline intellectual functioning," citing to 20 C.F.R. § 404.1513(a)(2), and concluding "[t]he record does not support Plaintiff's contention that the ALJ failed to give Ms. Stenfors' opinion controlling weight" (Doc. No. 16, p. 20). However, these "individuals" must be psychologists, not therapists or social workers. The distinction is important, as it impinges on whether a treating source's opinion may be entitled to controlling weight. As this Court finds Stenfors does not qualify as an "acceptable medical source," it disagrees with the Magistrate's finding in this regard.

6

The regulations permit:

[A] vocational expert or specialist [to] offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed it or as generally performed in the national economy.

\* \* \*

If we find that your residual functioning capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.

20 C.F.R. § 404.1560(b)(2)&(c).

Even if Stenfors cannot be considered an "acceptable medical source" entitled to controlling weight, the ALJ may still rely on her decisions in forming his hypothetical question for the VE. 20 C.F.R. § 404.1527(d) lists the factors an ALJ may consider in weighing a treating source not afforded controlling weight, including the examining relationship, treatment relationship (including length, frequency of examination, and the nature/extent of the treatment relationship), supportability of the findings, consistency with the Record as a whole, specialization of the examining source, and other factors. The ALJ may rely on treating source opinions that weigh in favor of these factors both in formulating hypothetical questions for the VE and in making his ultimate determination regarding Plaintiff's claim. *Id.*

In the instant matter, the ALJ properly relied upon Stenfors' opinions as Plaintiff's long-time treating therapist (regularly from July 2003), noting Plaintiff's global assessment of functioning scores rose from 58 in April 2004 to 64 in November 2006, representing "only mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well" (Tr. 22, 421). The ALJ also relied upon Stenfors' final report of April 2007 in formulating his assessment

7

of Plaintiff's limitations, noting that "as [Plaintiff's] stress level increases, [her] ability to function decreases" (*id.* at 23). Moreover, prior to documenting Plaintiff's several-year improvement while on her medications, Stenfors noted Plaintiff was "unable to work as nurse because of addiction; needs new job skills" (*id.* at 236). Stenfors also noted Plaintiff "need[ed] to be retrained" rather than suggesting Plaintiff was disabled and unable to work (*id.* at 228). Consistent with these opinions, the ALJ incorporated Stenfors' findings into his hypothetical for the VE,[3] and found Plaintiff could not return to her past work but could perform other low-stress jobs (*id.* at 25-26).

Thus, substantial evidence supports the ALJ's reliance on Stenfors' treatment notes, global assessment of functioning scores, and narrative assessments in determining Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (*id.* at 26). He was under no obligation to rephrase his hypothetical question to the VE to encompass every potential limitation Stenfors indicated on her medical assessment form, but rather only those opinions that pass muster under the factors of 20 C.F.R. § 404.1527(d), as he did.

---

[3] The ALJ posed this hypothetical to the VE at Plaintiff's second hearing:

> Assume an individual the same age, education, work background as the, the claimant. This individual [] could be around employees throughout the work day. But only occasional. That's defined as up to one-third of the work day. Conversations and interpersonal interactions of a brief nature. Defined as five to ten minutes at a time. Low stress job, defined as occasional, up to one-third of the work day. Simple, meaning no vocational training necessary, changes in the work setting, and no production rate case work, but is capable of performing goal-oriented work. Based on those limitations, and those limitations alone, would there be any jobs in existence for such a limited individual?

(Tr. 519-20).

## CONCLUSION

For the foregoing reasons, the Magistrate's R&R is adopted. The Court affirms the ALJ's decision to deny Plaintiff DIB and SSI benefits.

IT IS SO ORDERED.

                                               s/ *Jack Zouhary*
                                               JACK ZOUHARY
                                               U. S. DISTRICT JUDGE

                                               March 31, 2009